ARKANSAS-MISSOURI POWER COMPANY *v.* BROWN.

Opinion delivered March 26, 1928.

1. ELECTRICITY—CONTRACT TO FURNISH ELECTRICITY.—Where a city by ordinance grants a franchise to a public service corporation to furnish electricity to its inhabitants on certain rates, terms and conditions, which are accepted in writing by the company, a contract between the parties is constituted by which their rights are to be determined, the terms and conditions becoming binding on the municipality and the company.

2. ELECTRICITY—DUTY TO FURNISH ELECTRICITY.—A public service company, which has accepted a franchise requiring it to fur-

nish electricity to private consumers in the city at a certain rate, cannot justify an absolute refusal to furnish service to a building, on the ground that furnishing the service would be too expensive.

3. APPEAL AND ERROR—RIGHT TO DISMISSAL OF CAUSE.—Though, since a judgment was rendered for damages and injunction against a public service company for refusal to furnish electricity to a building, the territory embracing the building has been detached and excluded from the city limits, an appeal will not on that account be dismissed, the right to affirmance of the judgment for damages not being affected thereby.

Appeal from Randolph Chancery Court; *A. S. Irby,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellees brought this suit to compel appellant to furnish lights, and for damages for failure to do so, under its charter, to his filling station located within the city limits of Pocahontas, but about a mile south of Black River, the improvements in the city being all virtually north of the river.

It was alleged that the appellant company was the assignee of the franchise granted to W. H. Skinner under the ordinance providing therefor, and by its terms was bound to provide consumers in the incorporated town of Pocahontas electrical energy at the price designated, not exceeding 15c per kilowatt hour. That he had repeatedly requested the company to furnish his filling station with electricity for lighting purposes, in accordance with the franchise ordinance, but that the company had neglected, failed and refused to comply with his demand and requests, to his damage in the sum of $250. It was further alleged that appellant company had refused to furnish electricity for lights for the said filling station for the alleged reason that it could not do so at a profit, thereby refusing to comply with the terms of its contract or franchise with the city. Stated further that they were without adequate remedy at law, and prayed a mandatory injunction to compel the company to furnish electricity for lights, in accordance with its franchise.

The appellant company admitted that it had not furnished electricity for lighting the station, because it was situated a mile or more from the main residence section of the city of Pocahontas, across Black River, to the east and south. That the station was located on the public highway, and not on the city streets, there were no other residences or business houses near it, and it would be the only consumer in the vicinity to be served, and that it would cost several thousand dollars to extend a line with necessary equipment to supply lights to the filling station, and that the demand for such service was unreasonable, unfair, and unjust to it, and could not be complied with without great loss, and that such service, under the circumstances, could not have been in contemplation of the parties to whom the franchise was granted by the city at the time of granting it.

Appellees amended their complaint, setting out that J. W. Brown was the owner of the filling station, having purchased the same at a time when the company was furnishing lights and power to the station; that it had ceased furnishing power and lights without any notice of any intention on its part of doing so, and that the said Brown had purchased the filling station relying upon lights and power service being furnished, which was one of the inducements to the purchase.

These allegations were all denied by appellant company.

It appears from the testimony that Brown, one of appellees, was the owner of the lands upon which the filling station was situated, having purchased same in August, 1924; that it was located in the limits of the city of Pocahontas, and, at the time of Brown's purchase, was being furnished with lights by the appellant company, being wired for lights and current at that time. The company ceased furnishing current and lights when it built its high-power lines, and the station rented for $20 per month when lights were furnished, and for only $15 when they were discontinued.

There was testimony tending to show the necessary cost for supplying the lights under present conditions would be about $1,000, and that only a small amount of electricity would be consumed by the filling station, the minimum charge of $1 per month, which could not be served by the company without a great loss, since there were no other probable consumers in the locality of the filling station.

The court rendered judgment for $140 damages, and granted a mandatory injunction requiring appellant to install the lighting service at the filling station, from which judgment this appeal was prosecuted.

A motion to dismiss the cause has been filed here, showing that on May 18, 1927, after the rendition of the decree appealed from, an ordinance was passed by the city council of Pocahontas providing for changing the boundary of the city, and excluding all the territory lying east of Black River from the city limits; that it had been duly submitted to the qualified electors of the city, and voted upon and ratified, and the territory lying east of Black River, upon which was situate the filling station, was detached and excluded from the corporate limits of the city. Prayer that the case be dismissed as to the question of the right to the mandatory injunction as settled by the exclusion of the territory upon which the filling station in situate from the city limits, within which only the lighting company was bound under its charter to furnish lights, and an affirmance only of the judgment for the $140 damages.

A response was filed to this motion, in which it is insisted that the entire judgment should be affirmed, leaving the appellant to further proceedings in a lower court to avoid the effect of the mandatory injunction, if it shall have any right to do so, etc.

*H. L. Ponder,* for appellant.

*John L. Bledsoe* and *Schoonover & Schoonover,* for appellee.

KIRBY, J., (after stating the facts).   It has long been settled law that, where a municipal corporation by ordinance grants a franchise to a public service corporation to furnish electricity or gas to its inhabitants upon certain rates, terms and conditions, which are accepted in writing by the public service company, a contract between the parties is constituted, by which their rights are to be determined, the terms and conditions becoming binding on the municipality and the company.  *Pocahontas v. Central Power & Light Co.,* 152 Ark. 276, 244 S. W. 712; *Arkansas Light & Power Co.* v. *Cooley,* 138 Ark. 390, 211 S. W. 664; *Lonoke* v. *Bransford,* 141 Ark. 18, 216 S. W. 38.

In § 2 of the ordinance granting the franchise to W. H. Skinner, of which appellant is now the assignee and owner, it agrees ''to furnish to private consumers in said corporate town electrical energy at a rate of not exceeding 15c per kilowatt hour,'' allowing a minimum charge not to exceed $1 per month.

It is not denied that the filling station of appellee, Brown, where he demanded that power and lights should be installed under the terms of the franchise granted by the city, was situate within the limits of the incorporated town.   Neither is it denied that appellant refused to furnish appellee Brown power and lights for consumption at said filling station, attempting to justify its refusal to do so because of the small amount of power and electricity that would be consumed at the filling station and the high cost of supplying it to but one consumer, there being no other business house or residences in the vicinity of the filling station where other probable consumers might be served, and for these reasons alleged that the demand was unreasonable, unfair and unjust, and could not be complied with without great loss and damage to it.

There was no attempt made to disclose the amount of the revenue that was being derived from the entire service to the consumers in the city of Pocahontas, the cost of such service, the value of the property devoted

to the public use, upon which appellant had the right to expect a reasonable return, nor the profit derived from the service rendered, as to whether it yielded a reasonable return or a just compensation to the power company.  Neither did the appellant company offer to furnish the service, which it was bound under the terms of its franchise or contract with the city to supply, to appellee's filling station in the corporate limits of the city for a rate which it regarded reasonable, but refused to supply it at all.

It could have applied to the city council for a change of rates for supplying consumers similarly situated, or permission to charge an increased or higher rate, if the rate was regarded unreasonable, but it could not show that the demand for the service under its franchise was so unreasonable as to excuse it from furnishing the service, by proving only the probable expense for the service to be rendered the particular consumer with the revenue to be derived therefrom.

It is also true that appellee could only compel the furnishing of the lighting service to his filling station, under the terms of the franchise held by appellant, while his station was within the corporate limits of the city of Pocahontas.  The fact that the territory upon which the filling station is situate has since been regularly detached and duly excluded from the corporate limits of the city, which have been contracted as shown by the motion to dismiss the cause, does not warrant such dismissal here, since appellee is entitled to an affirmance of the judgment for the damages recovered, in any event.

A dismissal of the appeal would still leave the order for a mandatory injunction in force, and while we do not determine whether appellant can be compelled under such injunction to supply the lighting service to appellee's filling station, which is no longer in the corporate limits of the town, we do not find any reversible error in the record, and the judgment is affirmed.