Graham, Judge,
delivered the opinion of the court:
This case comes up on demurrer. Briefly, the averments of the petition are that from April 5, 1918, to November 15, *406 1918, the Government owned and controlled by regulation all the wool in the United States, and would not allow any of it to be bought, sold, or used without its written consent. It is not averred through what instrumentality the Government thus regulated and controlled the wool. It is further alleged that one Capt. Claude K. Ketcham was assigned, but not stating from xvhom he received his authority, to prevent any diversion of wool; that on the 10th of July, 1918, the Government, through some unnamed instrumentality, “ gave the claimant corporation an obligatory order or requisition * * * No. 4475-N, for sixty thousand pairs of puttees, under which the Government was to allot yarn from some yarn manufacturer, and likewise to allot to the yarn manufacturer wool from some concern holding Government wool; ” further that the Government allotted certain yarn to the plaintiff from two firms in the amount of 30,000 pounds from each, and obliged the plaintiff to sign a statement that it had entered into a contract with each of these parties upon condition that wool be allotted to them by the Government, and agreed to use the yarn allotted exclusively in fulfilling said Government order No. 44I5-N.
It is further alleged that the plaintiff was directed by the Government under this order No. 4475-N, tó supply “sixty thousand pairs of puttees” (meaning cloth for that purpose) to two firms, namely, The Panama Knitting Mills and the Rosen-wasser Bros., each of which firms had contracts with the Government for the manufacture of puttees, and that on or about the 1st of September, 1918, after it had supplied cloth for 50,480 pairs of puttees to the last-named parties, the Government cancelled their contracts so that they could not take any more cloth from the plaintiff; that this left the plaintiff with a certain amount of yarn on hand, which shortly after this cancellation, it requested permission from the Government to sell to either a Government contractor or a civilian contractor, the price of the yam at the time being about twice what the plaintiff had paid for it, but that the said Capt. Claude K. Ketcham, of the Quartermaster Corps, “ whose specially assigned duty it was to permit or to refuse permission,” refused /to allow the sale of this cloth by the plaintiff; further, that thereafter, on No *407 vember 30, 1918, the Government “ terminated the plaintiff corporation’s obligatory order or requisition No. 4475-N, when it had only delivered 50,480 pairs of puttees”; that at the time of this termination the market price of yarn had greatly declined and was not worth more than a fourth of what it was on the 1st of September, 1918.
The plaintiff sues to recover the difference between the market price on November 30,1918, and the market price as of September 1,1918, and sets out a statement purporting to show a loss of $60,156.41. There is no averment as to what the market price was on November 30, 1918, or what it was on September 1, 1918. All that appears in the said statement is the cost to the contractor of material.
The plaintiff failed to attach to its petition, as required by the rules of the court, copies of its alleged contracts or order upon which it bases its claim, and excuses itself by saying that it had “no copies of any of the orders or contracts heretofore mentioned, as they were all turned over to the Government.” The rules of this court provide for the production of papers in cases of this kind, and there is a rule of this court which the plaintiff could have easily invoked for this purpose. The mere statement that the papers'are in possession of the defendant does not excuse it for its failure to observe the rules of the court as to the filing of papers.
The plaintiff has averred no contract with the Government upon which it can base a claim for recovery. Briefly stated, plaintiff was ordered to take certain yarn from, we shall say,
A, and manufacture it into cloth and deliver it to B to be manufactured into puttees. There is no averment that the Government undertook to pay A, from whom plaintiff secured the yarn, or that it obligated itself to pay the plaintiff for the cloth delivered to B, who was to manufacture it into puttees.
It does not appear that the plaintiff had contracts with A for the yarn, but it is not stated that it had contracts with B. The fair assumption, however, is that it did have contracts with the latter, as it is not averred that it was paid any money by the Government for the cloth for 50,480 pairs of puttees delivered, for which, no doubt, it was paid by *408 someone. But however this may be, there is no fact averred making a contract, express or implied, upon the part of the Government to pay for this cloth which was to be delivered to B, or to be responsible for the yarn which was to be delivered to the plaintiff by A. It seems plain that the plaintiff understood that in manufacturing this cloth and delivering it to B it was to look to the latter for payment. There is no averment in the petition which even suggests an obligation upon the part of the .Government to pay for any of this cloth delivered to or manufactured for B, and it is fair to presume, assuming that the plaintiff exercised ordinary business judgment, that it would not have proceeded with the manufacture of it without some arrangement for payment. In any event, this order of the Government was not obligatory in the sense that it was duress. Not being obligatory, the plaintiff could have refused to comply with it. American Smelting (& Refining Co. v. United States, 259 U. S. 15. None of the requisites of a contract appear in this case. The property was not to be delivered to the defendant or its agent, no price is named, no time or place of delivery, no express or implied promise to pay.
As to the loss the plaintiff sustained by reason of the fall in price of the yarn which it had on hand, that is an incidental loss growing out of an authorized regulation by the representatives of the Government for protecting the Nation in time of war. It is an incidental damage for which the Government is nut liable. Omnia Commercial Co. v. United States, 261 U. S. 502.
The plaintiff also asserts a claim in the sum of $10,933.90 for the S. B. & B. W. Fleisher Co. (Inc.), which was one of the firms from which it was to secure yarn under allotment by the Government. It is not averred that the plaintiff is obligated to pay this claim, but that the claim has been “ filed with the claimant corporation,” and that at the time of the armistice the said Fleisher (Inc.), of the 30,000 pounds of yarn which the Government allotted it to deliver to the plaintiff, had delivered only 18,110 pounds, leaving á balance to be delivered of 11,890 pounds, and that at the time of the said armistice there was in process of manufacture an undelivered product as set out in the itemized state *409 ment of the claimant. This itemized statement fixes certain prices for different kinds of material. The claim is too indefinite to be given consideration. It does not show any liability upon the part of the plaintiff, and Fleisher (Inc.) have not been made parties plaintiff. No judgment under the circumstances could be rendered on the claim in this suit.
Defendant’s demurrer should be sustained, and it is so ordered. Leave is given the plaintiff to amend his petition as he may be advised within thirty days from the date of this decision.
Hat, Judge; Dowsnsv, Judge; Booth, Judge; and Campbell, Qhief Justice, concur.